UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| CATHY S. CONAWAY, individually and in her capacity as the CONSERVATOR of BETTY L. SANKS, and SANKS ENTERPRISES, INC. | )<br>)<br>)<br>)<br>) | |
| | ) | MC416-011 |
| Movant, | )<br>) | |
| v. | )<br>) | (Pending in the United States District Court for the Western District of Missouri, 4:16-cv-206) |
| H&R BLOCK EASTERN ENTERPRISES, INC., | )<br>)<br>) | |
| Respondent. | ) | |

## ORDER

Cathy S. Conaway, individually and as conservator for her mother, joins with Sanks Enterprises, Inc. (SEI) -- her mother's tax-preparation business -- in moving to partially quash subpoenas arising out of *H&R Block Eastern Enterprises, Inc. v. Sanks*, CV416-206 (W.D. Mo.) ("*Sanks*" litigation). MC416-011, doc. 1, *as amended*, doc. 2. H&R Block (HRB), which filed *Sanks* against her brother for defrauding it and thus wants SEI-related documents from Cathy, opposes. MC416-011, doc. 3. For the purpose of this Order, the Court accepts as true facts taken from the parties' filings.

# I. BACKGROUND

Partly opposing HRB's subpoenas,[1] movants' factual recitation generally dovetails with HRB's facts. Betty L. Sanks founded SEI, at 5669 Ogeechee Road, Savannah, (the "5669 office") in 1988.[2] She remains its sole shareholder. Doc. 1 at 2. Yet in 2011 Cathy's brother, Claude L. Sanks, Jr., represented to HRB that *he* owned SEI (d/b/a "Sanks Income Tax and Business Services"). Doc. 3 at 5. Claude told that lie to secure a 2011 agreement with HRB to convert "his" business into an HRB franchise. Under that agreement, he also acquired a second location across the street, at 5710 Ogeechee Road (the "5710 office"). *Id.*

For a while HRB believed that he operated both locations as an HRB franchise. Doc. 3 at 5. But at some point Cathy, after noticing

---

[1] Cathy says that two of the three subpoenas were withdrawn by agreement, leaving only the one served upon her at issue here. Doc. 1 at 1. HRB disagrees:

> This is not so. Rather, [Cathy] has unilaterally represented that there would be no documents responsive to those subpoenas that are not already responsive and available for production by her in response to the subpoena directed to her individually. Accordingly, while the other subpoenas are still active and [Cathy] has failed to respond to them, [HRB] interprets the Motion to mean that [Cathy] is withholding documents responsive to all three of the Subpoenas.

Doc. 3 at 2 n. 2.

[2] Confusingly, the parties call it by various names like "the Business," or "the Company," or various d/b/a names.

2

HRB trade dress showing up at the 5669 office, asked Claude what he was doing. She challenged his ownership assertions. He lied to her and claimed that he HRB-franchised only the 5710 office. *Id.* at 6. He never disclosed that lie to HRB, but instead relocated the 5710 office a few miles away "to improve visibility." He assured HRB that he would move the 5569 office as well, since that building was being sold or demolished. *Id.* at 6. He thus convinced HRB to pay him $1 million to sell the entire business, operating from both offices, to it. *Id.*

But Claude never moved the 5569 office, and that office never closed. Doc. 3 at 6. HRB ultimately confronted Claude, who further misled it by reassuring HRB that he would transfer the rest (Betty's portion) of the business to it, but never did. Doc. 3 at 7. HRB thus has received only a fraction of what it paid Claude for (*i.e.*, clients and revenues), and has alleged that much of it remains under Cathy's control. And Cathy continues to operate (in competition with HRB) the 5569 office to this day. *Id.* HRB thus sued Claude (*Sanks*) for fraud, etc., and presses its subpoena against the movants. *Id.* at 8-9.

HRB asserts additional facts which, if they don't suggest "familial collusion," certainly demonstrate that Cathy, who has

continued operating the 5569 office as "Sanks Income Tax and Business Services" (thus, an HRB competitor), doc. 3 at 8-9, is in a position to assist her brother's efforts by in bad faith stonewalling HRB. HRB underscores the undisputed events timeline here:

> [Cathy] amended the state registration for [SEI] to name her mother as CEO and herself as CFO, replacing her brother, and claimed to H&R Block that [Claude] had never owned the Business at all. H&R Block subsequently filed suit against [Claude] for, *inter alia*, defrauding H&R Block, failing to deliver the Business as promised, and breaching the parties' contracts ([*Sanks*]).

Doc. 3 at 2-3 (footnote added). HRB also points out that

> while [Cathy] is not named as a party to [its *Sanks* case against Claude], she, the Business she is running, and the entity through which she is operating (*i.e.*, Sanks Enterprises d/b/a Sanks Income Tax and Business Services) are central to the dispute being litigated. Moreover, [Cathy] and Sanks Enterprises/Sanks Income Tax and Business Services are in a unique position to provide information and materials that are both directly relevant to the Lawsuit and not available to H&R Block from other sources. Accordingly, H&R Block served the Subpoenas to obtain this discovery.

*Id.* at 3.

Cathy knows that HRB accuses Claude of lying to it about his sole SEI-ownership claims that included the 5669 location. Doc. 1 at 3. She also knows that at some point he entered into an "Asset Purchase Agreement" (APA) with HRB, and that HRB understood the APA to

4

mean that Claude was selling it "the entire tax preparation business at the 5669 Ogeechee Road location where [SEI] maintains its offices. . . ." *Id.* at 3. But she says she only learned of this in January 2015, when she received a cease and desist letter from HRB's counsel. *Id.*

Before this Court Cathy stands on her claim that Claude had no authority to sell any of SEI to anyone, and that she was unaware of such activity. Doc. 1 at 3-4. In fact, she claims, she had her lawyer demand an explanation from Claude, and further demand that he rectify the situation "to make it clear to HRB that he had conveyed no assets of the Company and was without the authority to do so." *Id.* at 4. She even asked to be part of Claude's attempts to resolve the matter with HRB, but was excluded. *Id.* at 4. She admits that she is still operating SEI today, and does not dispute that it is an HRB competitor. *Id.* at 4-5.

## II. ANALYSIS

A non-party "may invoke the inherent power of the court to secure protection from discovery which seeks confidential or privileged information or which would cause undue burden on the non-party." *Fadalla v. Life Automotive Products, Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). They bear the burden of showing grounds to quash. *Wiwa v.*

*Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). This Court therefore must balance HRB's need for discovery against the burden that its subpoena imposes upon the movants, which includes their interest in keeping the requested information confidential for proprietary-competitive reasons. *Id.* It thus examines relevance, breadth of the subpoena's document requests, the time period covered by them, the particularity with which the documents are described, and status of each target as a non-party. *Id.*; *Fadalla*, 258 F.R.D. at 504.[3]

Again, a typical quash ruling protects against a subpoena that "'requires disclosure of privileged or other protected matter' or 'subjects a person to undue burden.' FED. R. CIV. P. 45(d)(3)." *Malibu Media, LLC v. Doe*, 2014 WL 11958625 at *2 (S.D. Fla. July 17, 2014). For that matter, subpoenaing parties must take reasonable steps to avoid

---

[3] As was recently explained:

> The scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules. Fed. R. Civ. P. 45 advisory committee's note to the 1970 Amendment. Thus, a court must examine a request contained in a subpoena *duces tecum* under the same standards set forth in Rule 26(b). Federal Rule of Civil Procedure 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). Moreover, a non-party may be granted a protective order from providing discovery upon a showing of "good cause." Fed. R. Civ. P. 26(c).

*Soricelli v. GEICO Indemnity Company*, 2017 WL 275967 at * 1 (M.D. Fla. Jan. 20, 2017).

imposing undue burden or expense on their targets; abusers can be sanctioned. Fed.R.Civ.P. 45(d)(1); *E.E.O.C. v. Dillard's, Inc.*, 2009 WL 917828 at * 2 (M.D. Fla. Mar. 31, 2009).

Here HRB wants things like SEI's "revenues, expenses, profits, and losses" during the "Claude-HRB transaction" time period, doc. 1 at 6, along with documentation on who precisely has owned SEI, ownership-change reasons, and so forth. *Id.* at 7. It also wants, *inter alia*, Cathy's and SEI's telephone records from July 1, 2014 onward. *Id.* at 9-10.

To that end, HRB unmistakably intimates familial collusion of some sort. *See* doc. 3-4 at 11 ¶ 56 ("[Cathy's] business at the 5669 Ogeechee Road office was, in reality, the continued operation of the very same Business that [Claude] represented he could and would sell to [HRB]."); *id.* at 12 ¶ 57 ("[Cathy] not only continued to use the identical trade name, "Sanks Income Tax and Business Services," telephone number . . . website address (http://www.sanksincometax.com), and other assets that [Claude] agreed to sell to H&R Block at the reopened office, but [Cathy] also continued to hold the operation out as the same Business that had been sold, offering the very same services that the

Business had offered (and now offers through [HRB]), including income tax preparation and accounting services.").

But HRB, argues Cathy, simply seeks too much, including the proprietary information of a known competitor:

> HRB has no substantial need . . . to obtain detailed information on the financial performance of the Company. There are alternative, and even superior, ways available for HRB to prove damages without availing itself of the detailed financial records of a nonparty competitor, which by any objective assessment is not the "best evidence available" on that point, if it even rises to the level of any evidence at all.

Doc. 2 at 5 (emphasis omitted).

The Court is inclined to rule in HRB's favor. A fraudulent market is not a free market, and HRB has advanced a pretty convincing claim that Claude defrauded it. And, since it's too easy for family members to collude in such a situation, whatever "competitive harm" SEI might suffer, and whatever privacy invasion Cathy might endure, should yield to HRB's right to glean from the subpoenaed documents evidence of collusion, fraud, damages, etc. The relevancy standard here, after all, is fairly liberal. *See, e.g., Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) ("A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should

be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt . . . the court should be permissive.") (quotes and cite omitted); *supra* n. 3. Also, protective orders may well enable movants and HRB to structure subpoena compliance without unduly inflicting "competitive harm."

But a legal wrinkle has arisen. Recall that there are three "quash" movants before this Court: Cathy individually, Cathy as conservator for her mother, and SEI. After they filed their quash motion, their counsel withdrew. Doc. 19. A corporation, however, must be represented by counsel. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985); *Davis-Brown v. Federal Deposit Insurance Corporation (FDIC)*, 2016 WL 5858997 at * 3 (S.D. Ga. Oct. 4, 2016). And conservators can't represent wards in court. *Black v. Alabama*, 2015 WL 668080 at * 2 (M.D. Ala. Feb. 17, 2015); *Oliver v. Southcoast Medical Group*, LLC, 2011 WL 2600618 at * 2 (S.D. Ga. June 13, 2011).

The Court thus cannot not entertain any pleadings filed by SEI unless it is represented by counsel. *See N. Augusta Mgmt. Grp., LLC v. Sw. Golf Grp., Inc.*, 2011 WL 1151128 at *1 (S.D. Ga. Mar. 28, 2011).

Furthermore, Cathy is not a lawyer admitted to this Court's bar, so she cannot represent SEI, nor litigate on behalf of her mother.

Still, the movants do have their now ex-lawyer's briefing before the Court. And Cathy may appear "individually," representing herself. 28 U.S.C. § 1654 ("[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel. . ."). Plus it's undisputed that HRB subpoenaed, *inter alia*, Cathy's personal phone records, doc. 1-2 at 4, so she should be able to litigate that much *pro se*. Yet, the movants' own filings show that Betty is SEI's sole shareholder, doc. 1 at 2, which means that Cathy is not only advancing her own individual interests, but Betty's/SEI's. And the quest for her phone records is obviously aimed at uncovering evidence that a sister might be abetting her brother's fraud in the sale of *SEI*, not anything personal to Cathy. Her phone records may well inextricably intertwine SEI's business.[4]

It therefore is reasonably probable that a ruling here will unavoidably enmesh Cathy's *pro se* right to litigate her personal rights

---

[4] Nothing prevented counsel from attaching affidavits to support the factual assertions that they advanced in support of the narrative here. The Court is thus constrained to assume "briefing facts" as true, which is never a good idea (yet, the Court cannot stop and hold a mini-trial to support every motion's factual narrative).

with the litigation of rights belonging to Betty and SEI. If the Court rules against Cathy, she would -- as a controlling principal and as someone in charge of her mother's business (hence, SEI's) affairs, have to produce the subpoenaed individual *and* SEI records, and be under a fiduciary obligation to defend both SEI's and Betty's legal interests. And if the Court rules *for* her, HRB will be free to move for reconsideration, appeal (etc.), and thus put her mother and SEI to the task of responding.

Except that they can't. Not without a lawyer. In fact, they *cannot* file anything further in this case except through counsel. Since no replacement counsel has appeared, it makes sense to pause and deny the quash motion without prejudice to renew it through replacement counsel. To accommodate that end, the Court will stay enforcement of HRB's subpoena for 14 days from the date this Order is served.

### III. CONCLUSION

The movants' motion to quash, doc. 1, *as amended*, doc. 2, is **DENIED** without prejudice to renew it through replacement counsel. The Court **STAYS** enforcement of respondent's subpoena for 14 days from the date this Order is served. Finally, the movants' motion for oral argument is **DENIED** as moot. Doc. 10.

**SO ORDERED**, this 15th day of February, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA