# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| CATHY S. CONAWAY, individually )<br>and in her capacity as the )<br>CONSERVATOR of BETTY L. )<br>SANKS, and SANKS ENTERPRISES, )<br>INC. )<br>)<br>     Movant, )<br>)<br>v. )<br>)<br>H&R BLOCK EASTERN )<br>ENTERPRISES, INC., )<br>)<br>     Respondent. ) | MC416-011<br><br><br>(Pending in the United States District<br>Court for the Western District of<br>Missouri, 4:16-cv-206) |

## <u>ORDER</u>

Unfolding here is the next wave in satellite litigation spawned by a Missouri fraud case. Cathy S. Conaway, individually and as conservator for her mother, joined with Sanks Enterprises, Inc. (SEI) -- her mother's tax-preparation business -- in moving to partially quash Fed. R. Civ. P. 45 subpoenas arising out of that case, *H&R Block Eastern Enterprises, Inc. v. Sanks*, CV416-206 (W.D. Mo.) ("*Sanks*" litigation). MC416-011, doc. 1, *as amended*, doc. 2. H&R Block (HRB) filed *Sanks* against her brother, Claude Sanks, claiming that he defrauded it. It then subpoenaed SEI-related documents from

Cathy, who brought this action to quash that subpoena. MC416-011, doc. 3; doc. 1-2. Inclined to rule in HRB's favor, the Court paused so the movants could find new counsel after theirs withdrew. *Conaway v. H & R Block Eastern Enterprises, Inc.*, ___ F. Supp. 3d ___, 2017 WL 626759 at *4 (S.D. Ga. Feb. 15, 2017).

Once re-represented, the movants (hereafter for convenience, collectively "Cathy") renewed their quash motion. Doc. 21. The parties, Cathy claimed, have

> resolved many areas of dispute over the subpoenas as they were originally tendered. However, disputes remain[ed] with respect to information sought by HRB relating to (i) personal financial information of [Cathy] and her mother, Betty C. Sanks, for whom [Cathy] acts as Conservator and Guardian; and, (ii) the financials, customers, and employees of the Company, a corporation of which Betty C. Sanks is the sole shareholder.

*Id.* at 2.

Many of her concerns turned on disclosing proprietary information to a competitor. Doc. 21 at 7 (objecting to Subpoena Request 10 because "HRB is using its litigation with [Claude] to obtain detailed financial information concerning a competitor of HRB's in the Savannah market."). In that regard,

> [c]ourts can quash or limit (*e.g.*, via protective order) a subpoena if it requires "disclosing a trade secret or other confidential

2

research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). But "there is no absolute privilege for trade secrets and similar confidential information." *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner, & Smith Inc.*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006) (quoting *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979)). Instead, "courts weigh the claim to privacy against the need for disclosure, and commonly enter a protective order restricting disclosure." *Festus & Helen*, 432 F. Supp. 2d at 1380. Such an order may require that "a trade secret or other confidential . . . commercial information . . . be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

*Herrera-Velazquez v. Plantation Sweets, Inc.*, 2015 WL 5613195 at * 5 (S.D. Ga. Sept. 23, 2015). But in such cases, the Court reasoned, the parties should show the Court why a protective order can't be hammered out to cover such concerns.[1] Doc. 22 at 3-4.

---

[1] Cathy's other objections went to HRB's request for documents that are "sufficient to show" the existence of something like revenue levels (Subpoena Request 10, doc. 21 at 7), or the relationship between corporate entities (Subpoena Request 13, doc. 21 at 9). That's objectionable, this Court concluded, because it's vague and essentially asks another to disclose work product -- assemble enough documents/data *sufficient* to prove something exists, crosses a legal threshold, etc. At most a requestor can seek documents evidencing or reflecting a fact, *not* "sufficient to show" its existence or effect -- easily a trap for the unwary. Doc. 22 at 3-4.

HRB insists that "sufficient to show" *limits* the scope of such requests "so that the [m]ovants [will] not have to produce every responsive document, and [can] instead produce any documents that would 'show' (*i.e.* provide) the desired information." Doc. 27 at 8-9. Hence, Cathy can produce "any readily-accessible materials that [will] provide the information sought by the request, without having to undertake a full, expansive search for every potentially responsive document." *Id.* That's a sensible, alternative explanation, especially since Cathy jumps on the more onerous interpretation to justify her non- and under-production of documents, and otherwise support her quash motion. Doc. 29 at 6. The Court will apply HRB's more user-friendly interpretation here and grant Cathy's quash motion only to that extent (*i.e.*,

3

The Court shared those guiding principles while directing the parties to first confer before further involving it. Doc. 22 at 4 (citing *Hernandez v. Hendrix Produce, Inc.*, 2014 WL 953503 at *1 (S.D. Ga. Mar. 10, 2014) (applying duty to confer requirement in the Rule 45 context); *St. Johns Ins. Co. v. Nautilus Ins. Co.*, 2008 WL 1897572 at * 1 (M.D. Fla. Apr. 28, 2008) (same for motions to quash and to compel in a subpoena-based discovery dispute)). Fees, the Court warned, would be assessed for any bad faith shown. *Id.* at 4.

The parties have since conferred but failed to resolve the matter, so Cathy's renewed quash motion (doc. 21) must now be addressed. HRB opposes and demands $2500 in bad faith fees. Doc. 27. It accuses her of failing to confer in good faith and, with new counsel, changing previous positions and adding new -- but now untimely, thus waived -- objections. *Id.* at 5. Claude, meanwhile, is challenging discovery sanctions levied by the *Sanks* district court. *See In re Claude L. "Bobby" Sanks, Jr.*, No. 17-1593 (8th Cir. filed May 1, 2017) (his latest brief on his Mandamus Petition to reverse the district court's sanctions order again him and his counsel).

---

she need only comply using that qualifier). HRB, in the meantime, might want to couple that qualifier with its future subpoena requests.

## I. FACTUAL BACKROUND

The determinations this Court must now make are best understood by first reviewing HRB's factual assertions in its *Sanks* appeal-opposition brief. That lawsuit, HRB explains,

> arises from [Claude] Sanks' sale of a tax business to [HRB] under an Asset Purchase Agreement ("APA") at the end of 2014. After [HRB] paid [Claude] $1,150,000 for the business, [HRB] learned [Claude] had committed fraud, and could not deliver the business as promised. In fact, [Claude] had known all along that his sister, [Cathy], disputed [Claude's] ownership of the business and planned to keep operating it at its original location after the sale. None of this was disclosed to [HRB]. Instead, [Claude] fraudulently convinced [HRB] that it would need to "move" the business to a new location based on false representations the existing property was being sold. Then, after the sale, [Claude] continued to visit the original office, and personally processed the payroll for his sister's continued operation of the business there -- meanwhile, continuing to falsely assure [HRB] he would deliver the business to it.

*Sanks*, No. 17-1593, HRB's April 19, 2018 Mandamus Response Brief at (CM/ECF page) 11 (cites omitted). Claude, says HRB, also engaged

> in additional post-sale malfeasance, all of which directly injured [HRB], diverted away the very clients of the business [Claude] committed to sell to [HRB], and violated the parties' contracts. In 2015, following the sale of the tax business to [HRB], [Claude] worked as a[n HRB] employee, ostensibly to help transition clients to [HRB]. Unbeknownst to [HRB], however, [Claude] launched a competing business, "Tax & Accounting Services," and, while employed by [HRB], diverted away [HRB]'s clients to that business. Then, in 2016, [Claude] went to work for two independently-owned franchise tax businesses, including one

owned by his family, and again diverted away the clients he had contracted to deliver to [HRB] back to himself. [Claude's] actions directly violated noncompetition and nonsolicitation covenants [Claude] entered into under the APA (the "Covenants").

*Id.* at 12.

In this case HRB seeks communications between Cathy "and [Claude] from January 1, 2011, through the present[,] related to tax preparation services, [etc.]," doc. 1-2 at 4, in quest of evidence to support HRB's *Sanks*-trial burden that it was fraudulently promised one thing (an entire tax-prep business), yet delivered another (an empty shell, more or less). Citing the relatively liberal discovery standard,[2] HRB wants to subpoena documents reasonably thought to show whether anyone passively (if not actively) abetted Claude's fraud. It also seeks documents supporting or negating the SEI ownership claims made by brother and sister, bearing in mind that it's entirely reasonable to suspect familial collusion of some sort. *Id.* at 5-6.

Claude, for that matter, responds in *Sanks* by accusing HRB of "present[ing] a grossly inaccurate version of the record, wrought with

---

[2] The same liberal relevancy standards of Fed. R. Civ. P. 26 apply to Rule 45 determinations like this. *Hernandez*, 2014 WL 953503 at *1 n. 3.

misrepresentations and exaggerations concerning [his] alleged conduct in discovery." Claude's May 1, 2017 Mandamus Brief at 17. For example: "[HRB] claims that the District Court in Georgia, where Cathy Conaway was served with a subpoena, independently reached the conclusion that Conaway's role in this case is suspect, in an Order concerning Conaway's motion there to quash [HRB]'s subpoenas." *Id.* at 19. As this Court's last Order reflects, it never stated that, but simply assumed "briefing facts" to be true since no one here has bothered to support asserted facts with affidavits or any other evidence. *See Conaway*, 2017 WL 626759 at *4 n. 4.

It is against this highly contentious background that the Court turns to Cathy's renewed motion to quash. Doc. 21.

## II. ANALYSIS

Cathy's renewed quash motion advances little more than routine objections (HRB asks too much, seeks irrelevant or proprietary or burdensome matters, etc.). Doc. 21. HRB, in contrast, rolls heavy thunder in quest of documents it says it needs for the June 5, 2017 *Sanks* trial. Doc. 27 at 3. As noted, it has already won discovery sanctions against Claude in *Sanks*. Likewise here, it accuses Cathy of

7

sanctionable conduct. Its counsel teleconferenced with Cathy's lawyer on March 31, 2017, during which counsel promised that Cathy would "attempt to search for documents and inform HRB what documents she found, what documents [m]ovants would produce, what documents [m]ovants would continue to withhold from production, and the reasons why." Doc. 27 at 7-8.

Yet, while it's been up against this Court's twice-extended (to April 26, 2017) deadline to resolve this matter, doc. 26, "HRB has not received any response to its final email communication on this issue, sent April 21, 2017." Doc. 27 at 8; *see also* doc. 27-4 (email exchange showing counsel's promise to respond, then failing to do so). HRB thus complains that it's been stonewalled. In that respect, the Court notes that it has yet to be shown any communication thereafter, other than Cathy's latest (May 9, 2017) Reply Brief, doc. 29.

Of course, this Court tolerates no stonewalling, perjury,[3] or even passively obstructive conduct.[4] In that regard, it is conspicuous that

---

[3] Lying under oath, either live or "on paper," is a criminally prosecutable offense. *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002) (defendant's falsely subscribing to statement in his habeas petition that he had not previously filed a § 2255 motion was "material" for purposes of perjury prosecution; statement fooled the clerk of the court into accepting the "writ" for filing, and led the magistrate judge to consider its merits until she discovered that the "writ" was a successive § 2255

Cathy has simply let her renewed quash motion sit, with no updating, much less a conference certification,[5] or any showing that she engaged in a meaningful effort to confer. And her motion packs a lengthy list of subpoena requests with routine objections (overbroad, duplicative, overlapping requests, etc.) that *should* have been resolved through a meaningful conference. *See, e.g.*, doc. 21 at 5-6 (objecting to two documents relating to two unrelated individuals on privacy grounds); *id.* at 6-7 ("sufficient to show" objection -- "Movants cannot be expected to know [HRB's] subjective understanding of what is sufficient.").

---

motion in disguise); *United States v. Dickerson*, CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), cited in *Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009); *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012).

[4] *See Carter v. Belk, Inc.*, 2015 WL 4274425 at * 1 (S.D. Ga. July 13, 2015) (sanctioning party's violation of duty to confer requirement).

[5] The Court ordered the parties to confer, and thus contemplated (though it failed to expressly require) a conference certification. *Cf.* S.D. Ga. Loc. R. 26.5(c) ("Counsel are reminded that Fed. R. Civ. P. 26(c) and 37(a)(1) require a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court."). No matter. If the briefs reflect that the parties failed to comply with the Court's directive, then sanctions are warranted. The instant briefs reflect that failure, and sanctions therefore are warranted.

To be sure, there are substantial grounds raised against disclosure, and they boil down to protecting proprietary data like client lists -- the lifeblood of a tax preparation business: Customers walk in the door, or are referred by others, or respond to advertising, then can come back each tax year. They're valuable. Cathy doesn't want HRB to get her customer list. She points out, for example, that on the HRB/Claude Asset Purchase Agreement she sees no evidence that he sold a "customer list" to HRB. Maybe HRB, she intimates, is trying to unfairly get that asset from her here. Doc. 21 at 19. But that's grist for the attorney-conference mill. Lawyers object, compromises are reached.

Rather than attempt that here, Cathy has rested on over 20 pages of "grist" level objections, then asks the *Court* to slog through it. Worse, HRB illuminated Cathy's failure to confer, in response to which she announced her intent to file a Reply Brief, doc. 28, so the Court awaited her "failure-to-confer" explanation. But that brief sinks her ship. Doc. 29.[6] She does cite case law for the proposition

---

[6] Her lawyer also has been filing "bad scans" with this Court. Docs. 28 & 29. Every E-filed document should be "machine readable" because it enables users to search it using key words, and also mark and copy text from it. Producing a "machine

that otherwise waived (by failing to object) Rule 45 subpoena objections can be overlooked if "the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith." Doc. 29 at 2 (citing *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636-37 (C.D. Cal. 2005) (a nonparty's failure to timely make objections to a subpoena *duces tecum* generally waives them, but in unusual circumstances and for good cause, the failure to act timely will not bar consideration of such objections)). Of course, that's irrelevant because the Court ordered Cathy to sit down with HRB's counsel and work out her objections, and she obviously has not. In fact, in response to HRB's charge that she violated the Court's "confer" order,[7] she (in her Reply Brief) doesn't dispute the

---

readable" .pdf file, which is required for E-filing, is easy. Most word processors have a "publish to .pdf" or "print to .pdf" drop-down option under a "File," then "Print" command. Counsel should use that feature, which produces a machine-readable .pdf.

Parties must *not* print out a document and then run it through a mechanical scanner, which counsel here apparently has been doing (her E-filings have not been machine readable, thus hampering Court operations). That method fails to produce a machine-readable .pdf. Counsel should contact the Clerk's office should additional guidance be needed. The Court **ORDERS** her counsel to in all cases comply with this directive, which applies to all E-filers before this Court.

[7] A direct order ordinarily is unnecessary because S.D. Ga. Loc. R. 26.5(c) reminds "that Fed. R. Civ. P. 26(c) and 37(a)(2) require a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court." *Id.* "That rule is enforced." *Hernandez*

11

email chain, which unmistakably shows *no* meaningful effort to confer. At best it contains an as-yet unmet promise to produce documents. Cathy now tries to minimize that by stating what she should have timely told HRB's counsel while conferring with him:

> [Cathy] concedes that she has not provided [HRB] with any requested documents since the March 31, 2017 phone call. This is not, however, due to any lack of attention or effort on [her] behalf. . . . In fact, since March 31, 2017, [Cathy] has been searching records, researching contacts to reach IT and website providers to determine whether [SEI] has computer access to the documents [HRB seeks].
>
> For example, [Cathy] took the time to locate and contact the website administrator who provided email services for Sanksincometax.com from the website's creation until the present. The website creator had left the state of Georgia, so she was difficult to find. She informed [Cathy] that she had filed for bankruptcy in 2013 and no longer had any email records or other information from her business. . . . [Cathy] has also attempted to obtain text messages from her cell phone service provider. However, [she] has been unable to obtain these records thus far. . . .

Doc. 29 at 5.

The Court disbelieves her. First, the subpoena seeks documents in *her* possession. It does not (nor does the law) require her to contact

---

*v. Hendrix Produce, Inc.*, 2014 WL 953503 at * 1 (S.D. Ga. Mar. 10, 2014). Conferences, for that matter, must be meaningful. *Hernandez v. Hendrix Produce, Inc.*, 297 F.R.D. 538, 540 (S.D. Ga. 2014); *State Farm Mut. Auto. Ins. Co. v. Howard*, 296 F.R.D. 692, 697 (S.D. Ga. 2013).

third parties and retrieve documents from *them*. For that matter, the spirit of cooperation would induce any reasonable person to simply disclose such third parties for HRB to independently subpoena. Instead, Cathy lollygagged and, when confronted, basically claimed "these things take time," *then* disclosed "above-and-beyond" document retrieval attempts. But with an email chain that betrays at best a lackadaisical attitude, this smacks of a run-out-the-clock pretense. Doc. 27-4. And that follows a quash-renewal motion that otherwise reads like a first-wave response to a document request (as opposed to a meaningful, post-attorney-conference distillation) while resting on a generalized promise to produce records "soon." Too, the Court twice extended its "confer" deadline to enable informal resolution. Docs. 24 & 25. Only when HRB called her out on this did Cathy provide explanations that simply go off the reservation (*i.e.*, contacting third parties, doc. 29 at 5).

These actions evince more manipulation than cooperation. And discovery, it must be remembered, is supposed to be self-executing. *Leaks v. Target Corp.*, 2015 WL 4092450 at *1 n. 1 (S.D. Ga. July 6, 2015); *Bottoms v. Liberty Life Assur. Co. of Boston*, 2011 WL 6181423

at * 4 (D. Colo. Dec. 13, 2011) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through Rule 37, and obligates each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection.") (quotes and cite omitted). That means the parties are supposed to cooperate and confer *before* consuming Court resources. They have not, the blame is properly affixed to Cathy, and bad-faith sanctions are warranted.

### III. CONCLUSION

Accordingly, the Court **GRANTS** only in part and otherwise **DENIES** Cathy's quash-renewal motion. Doc. 21. Within 10 days of the date this Order is served, then, she therefore must produce *all* of HRB's subpoenaed documents subject to:

(a) HRB's "sufficient to show" qualification[8] noted *supra*, n. 1; and

(b) the condition that document turnover be made to HRB counsel's (and their staff's) "eyes only," where it encompasses customer lists, SEI employee data, or similar proprietary and

---

[8] This means, for example, that Cathy is free to respond, as she did to Subpoena Request 13, that "[HRB is] already in possession of *sufficient* documents to *show* that Sanks Income Tax and Business Services is merely a trade name of Sanks Enterprises, Inc." Doc. 21 at 9 (emphasis added).

personal privacy data (*e.g.*, the SEI bank account statements noted on doc. 21 at 6).[9]

In addition, the Court **ORDERS** the movants to pay HRB $1500 for its fees and expenses on this matter.[10] Finally, the Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case if there are no more filings within 21 days of the date this Order is served.

**SO ORDERED**, this 15th day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[9] This, incidentally, is what routinely agreed-to protective orders do (enable the lawyers to litigate claims while preventing one business from unfairly exploiting another's competitive, proprietary data). HRB may, upon a good cause showing, return to this Court on a motion for leave to expand such disclosure.

[10] HRB has simply *not* demonstrated, through the emails it cites (doc. 27-4) and time-consumption that it describes, doc. 27 at 8, that the $2500 that it seeks is reasonable.